# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Scott, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 358 C.D. 2015 |
| | : | Argued: October 6, 2015 |
| Zoning Board of Adjustment, | : | |
| Moyer Street Associates, LLC, | : | |
| and Kevin Baird | : | |

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge (P.)


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                         **FILED:  April 13, 2017**


John Scott (Scott) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), dated February 6, 2015, which denied his appeal from a decision of the Philadelphia Zoning Board of Adjustment (ZBA). The ZBA's decision granted use and dimensional variances to Moyer Street Associates, LP (Moyer)[2] and/or Kevin Baird (Baird) (collectively Intervenors) to

---

[1] This opinion was reassigned to the authoring judge on July 27, 2016, after Judge Leadbetter assumed the status of senior judge.

[2] On September 18, 2015, Scott filed an Application for Relief to Modify the Caption to Accurately Reflect the Parties in Interest (Application) with this Court, seeking, *inter alia*, to amend the caption and change all references to "Moyer Street Associates, LLC" to "Moyer Street Associates, LP."  Moyer opposed Scott's Application by filing a written response on October 2, 2015.  This Court hereby denies Scott's Application and notes that an amendment to the caption is unnecessary, because any decision with respect to the granting of use and dimensional variances will run with the subject property regardless of the presence of a
**(Footnote continued on next page…)**

develop a residential townhome community at 412-424 Moyer Street, Philadelphia (Property).  For the reasons set forth below, we affirm.

Moyer owns the Property, which consists of approximately 11,550 square feet of land in an area zoned Industrial Commercial Mixed-Use (ICMX) on a block also zoned Residential Single-Family Attached-5 (RS-5) in the Fishtown area of Philadelphia.[3]  From 2000 to 2008, Moyer Logistics, Inc. owned the Property and used it as an automobile salvage yard.  (Reproduced Record (R.R.) at 211a, 476a, 490a.)  At that time, an industrial steel structure covered one hundred percent of the lot.  (R.R. at 211a-12a.)  In 2008, Moyer Logistics, Inc. deeded the Property to Moyer.  (R.R. at 476a, 490a.)  Around that same time, Moyer applied for, but was ultimately denied, a residential use variance to build fourteen units in eight buildings on the Property.[4]  From 2008 through 2013, the

---

**(continued…)**

typographical error in the caption.  Nevertheless, based upon Moyer's undisputed admission that "[t]he proper legal name of Intervenor is Moyer Street Associates, LP," when referring to "Moyer" this Court will hereinafter be referring to "Moyer Street Associates, LP."  (Reproduced Record (R.R.) at 639a n.1.)  In addition, Scott's argument relating to the subject property's ownership will be addressed in further detail later in this opinion.

[3] The Property has 115 feet of street frontage and is 100 feet deep.

[4] *See Poole v. Zoning Bd. of Adjustment of the City of Phila.*, 10 A.3d 381 (Pa. Cmwlth. 2010).  In *Poole*, the ZBA granted use and dimensional variances to Moyer Logistics, Inc. for the residential development of the Property.  Scott, Michael Poole, Joanne Perrone, and Barbara Tarnoff appealed to the trial court, which affirmed the ZBA's decision.  Scott then appealed to this Court only as to the dimensional variances.  On appeal, this Court remanded the matter to the trial court to make additional factual findings regarding the dimensional variances.  Due to changes in market conditions, however, the involved individuals were unable to obtain financing, and they abandoned the proposed residential development of the Property.  (R.R. at 209a-10a.)

Property deteriorated and fell into disrepair. (R.R. at 211a-12a, 300a-06a.) At some point during that time, the roof of the steel structure was removed, but the walls remained standing. (R.R. at 211a-12a, 300a-02a, 305a-06a.)

On March 25, 2013, Moyer applied to the Philadelphia Department of Licenses and Inspections (Department) for a permit to construct fourteen three-story residences on the Property (consisting of two rows of attached homes with seven homes along the front of the Property and another seven homes along the back of the Property) with thirteen interior parking spaces/single-car garages, a rear yard depth of 8.25 feet, and an aisle width of 12.42 feet. (R.R. at 201a-02a, 292a-93a.) The proposal included pilothouses, rooftop deck views, and a single curb cut entrance leading to an interior driveway. (R.R. at 292a-93a.) The Department refused the permit on April 29, 2013, noting that the proposed residential use was not permitted in the ICMX zoning district and that the proposed development did not meet the requirements for minimum rear yard depth, minimum aisle width, and the required number of handicapped-accessible parking spaces. (R.R. at 202a.)

Moyer appealed to the ZBA, which conducted a hearing on June 26, 2013. At that time, Moyer presented a revised development plan for the Property, which consisted of twelve row-style and carriage-style homes with the rear yard depth increased to ten feet and the driveway aisle width increased to twenty-two feet.[5] (R.R. at 210a, 217a, 219a-20a.) Moyer indicated that the proposed height of the row-style homes was thirty-three feet and the proposed

---

[5] The Philadelphia Streets Department reviewed and approved the revised proposal. (R.R. at 220a.)

height of the carriage-style homes was thirty-nine feet. (R.R. at 212a.) Moyer indicated further that the proposed development plan included roof decks set back approximately eighteen to twenty feet from the rear wall of the Property. (R.R. at 227a, 230a.) Moyer explained that the Flora Street homes located to the rear of the Property are built right up against the rear wall of the Property and do not have any rear yards or rear windows. (R.R. at 212a-14a, 228a.) Moyer also indicated that even though the requirement for a handicapped-accessible space was more related to commercial and industrial uses with outdoor parking areas than to residential uses, it could accommodate a handicapped-accessible space if the ZBA required one. (R.R. at 217a-19a.)

In support of its request for use and dimensional variances, Moyer presented the testimony of James Maransky (Maransky). Although it is unclear from the record what Maransky's relationship with Moyer Logistics, Inc. and/or Moyer may have been, Maransky claims to have owned the Property since 2007. (R.R. at 221a.) Maransky testified that he purchased the Property through an assignor for an amount between $600,000.00 and $700,000.00. (R.R. at 224a-25a.) Maransky testified further that he had listed the Property for sale for over a year for an amount in the range of $800,000.00, but that there was "no interest [in it] as an industrial site. Almost every inquiry was for residential development, and any offers came contingent on zoning." (R.R. at 221a, 224a.)

Moyer also presented the testimony of Baird[6] and Liz Zimmers, Moyer's architect. Baird testified that the steel structure located on the Property

_____

[6] Scott contends, for the first time on appeal to this Court, that there is no record that Baird's testimony before the ZBA was offered under oath. (Scott's Br. at 21.) Moyer counters: "[A]s anyone who has ever attended a Philadelphia ZBA hearing is aware[,] all attendees are **(Footnote continued on next page…)**

4

must be removed and, since he believed that the Property's prior uses were as a salvage yard and "some kind of paint factory," "the soil ha[d] . . . to be removed and remediated." (R.R. at 222a.) Baird explained that the clean-up costs will be unknown until the soil is removed, but that based on preliminary environmental findings, he estimated that the costs would be substantial and exceed $100,000.00, and possibly $200,000.00. (R.R. at 233a-35a.) Zimmers clarified that Moyer "had a preliminary environmental report" and "some preliminary estimates," but that Moyer would typically wait until closer to the start of construction to have a full environmental report completed. (R.R. at 235a-36a.) Zimmers stated further that the drive aisle located between the two rows of homes was designed to accommodate a fire truck, that the homes were equipped with sprinklers, and that, in her professional opinion, the proposed design for the Property did not create an unsafe condition. (R.R. at 239a-40a.)

In further support of its request for use and dimensional variances, Moyer submitted into evidence a letter from Thomas S. Bond (Bond), a Pennsylvania real estate broker. (R.R. at 215a, 270a-72a.) Bond opined that industrial development at the Property is not feasible due to the surrounding residential uses, the Property's small lot size, the Property's condition and lack of infrastructure, and the Property's constrained boundaries. (R.R. at 270a.) Bond

---

**(continued…)**

sworn in en masse at the commencement of the hearing." (Intervenors' Br. at 11 n.3.) While we acknowledge that the ZBA hearing transcript does not reflect that any of the witnesses or counsel were put under oath before offering their testimony and evidence into the record, "it is well settled that matters not raised before the court below do not come within our scope of review." *DiNardo v. City of Pittsburgh*, 325 A.2d 654, 657 n.1 (Pa. Cmwlth. 1974). As a result, we will not address Scott's argument.

further opined that Moyer Street's narrow nature makes it inadequate for bearing the type of traffic that an industrial use would generate. (R.R. at 270a.) Bond also contended that "[i]t is highly unlikely that anyone would consider [the Property] for industrial use when there are so many superior alternatives available" within a two-mile radius of the site. (R.R. at 271a.)

Moyer also submitted into evidence a letter from the Fishtown Neighbors Association (FNA), dated May 28, 2013, which expressed FNA's support of Moyer's proposed development of the Property and requested, on behalf of the neighbors of Fishtown, that the ZBA approve the variances to construct the fourteen three-story residences on the Property. (R.R. at 343a-44a.) Although the revised development plan for the twelve homes was not presented to FNA, FNA indicated that it was unnecessary to submit it because a reduction/lower density project would appease more of the neighbors. (R.R. at 232a-33a.) Moyer also submitted into evidence letters of support from nearby residents Jason Tucker (Tucker),[7] Ryan Slaven (Slaven) and Vanessa Wong (Wong),[8] Jessica Brunazzi (Brunazzi),[9] and two others whose names are illegible,[10] who expressed that the proposed development would remove the dilapidated structure from the Property

---

[7] Tucker owns the neighboring property located at 426 Moyer Street. (R.R. at 346a.)

[8] Slaven and Wong own the property located at 1213 East Columbia Avenue, immediately adjoining the Property's south wall. (R.R. at 347a.)

[9] Brunazzi owns the property located in the Icehouse Development at 1247 East Columbia Avenue, Unit 10, directly across the street from the Property. (R.R. at 350a.)

[10] One of the remaining two residents owns the property located in the Icehouse Development at 1247 East Columbia Avenue, Unit 13, directly across the street from the Property. (R.R. at 349a.) The other resident owns the properties located at 1217-19 and 1221 East Columbia Avenue, both of which abut the Property. (R.R. at 351a.)

and continue the positive pattern of Fishtown's redevelopment and the character of the neighborhood. (R.R. at 346a-51a.)

In opposition to Moyer's requests for use and dimensional variances, Scott testified that he has lived in the neighborhood since 1995. (R.R. at 247a.) His home is located on the same block as the Property approximately 200 feet away. (R.R. at 241a.) Scott stated that his primary objection to the proposed development of the Property is that the inside row of homes "will directly block [his] view of Center City, which is why [he] bought [his] property in the first place." (R.R. at 98a, 375a.) Scott explained that the height of his property is twenty-three feet and that from his rooftop he can see Center City. (R.R. at 243a.) Scott explained further that he has a first floor deck with a similar view. (R.R. at 244a, 249a.) Scott acknowledged, however, that he does not have a permit to build a rooftop deck. (R.R. at 249a.) Rather, Scott accesses his roof through a staircase and commercial roof hatch. (R.R. at 244a.) Despite his concern about the loss of his view, Scott acknowledged that, without the use variance, an industrial building could be built on the Property at a height of sixty feet, which would also block his view. (R.R. at 242a.) More specifically, Scott explained:

> There are certain uses . . . where, by right, somebody could block the view. . . . I understood that buying the property, but I also understood that it was not likely to be reused as industrial, and we haven't objected to the reuse. In fact, we have asked the developer for about eight years now to rezone the [P]roperty residential, as opposed to coming back for variance after variance after variance.

(R.R. at 242a-43a.)

Scott testified further that he was also concerned that the proposed shared driveway on the Property and lack of a turnaround violate the Philadelphia Zoning Code (Zoning Code). (R.R. at 245a.) Scott also contended that the inside

7

row of homes will not be visible or easily accessible from the street and, therefore, could result in a "crime magnet" or fire hazard. (R.R. at 245a-46a.) Despite his objections and concerns, Scott admitted that if the proposed development consisted of only the six homes located on the front of the Property and fire trucks, police, and ambulances had access to the Property, he would have no objection to the variances being granted. (R.R. at 251a-52a.) Finally, Scott noted that "the City has the [P]roperty listed as sold in 2010 for only [$]340,000."[11] (R.R. at 264a.)

Joanne Perrone (Perrone) testified that she has lived at 409 East Flora Street for over 30 years. (R.R. at 258a.) She explained that the Property's rear wall is embedded to the back of her house. (R.R. at 254-55a.) Perrone contended that the Property's rooftop decks overlooking her front yard will be an invasion of her privacy. (R.R. at 256a-57a.) She acknowledged, however, that her Flora Street neighbors have a street view of her front yard. (R.R. at 259a-60a.) Perrone contended further that she believes that the proposed development of the Property will impede her ability to further develop her property in the future—*i.e.*, the installation of a rooftop deck and/or third floor. (R.R. at 256a.) She also contended that the density of the proposed development and the roof deck noise would be overwhelming for the area. (R.R. at 257a.) Lastly, Perrone presented a petition signed by approximately fifty-two residents local to the Property, who expressed concerns about, *inter alia*, fire issues, public safety issues, density, and the effect on surrounding property values. (R.R. at 263a-64a, 370a-74a.)

---

[11] According to property data prepared by Philadelphia's Office of Property Assessment, the Property was purchased in 2008 for $350,000. (R.R. at 382a.)

Michael Poole (Poole), who also lives at 409 East Flora Street, testified that he is concerned about density and the proximity of the homes to his property. (R.R. at 260a.) More specifically, Poole explained his concerns as follows:

> [Y]ears ago there was a factory that was across the street on Moyer Street, which is roughly 150 feet from us. Now, that place had a fire and they cooked the siding off of houses on Flora Street. Now they want to put these houses ten feet from me. That's too close, too close, and I don't think that they can get the right equipment in there to take care of a fire, if there is [one]. . . . And, also, if they [have] to come in from my side, that means water is going to be going over my house to get to these things. I don't think it's fair.

(R.R. at 260a.) Although he acknowledged that there would be the same issues if an industrial building was constructed on the Property, Poole was not concerned because there currently was no industrial building on the Property. (R.R. at 260a-61a.)

Barbara Tarnoff (Tarnoff), who has resided at the rear of the Property at 411 East Flora Street for thirty-five years, testified that she was concerned that twelve homes would be "jammed" into an 11,500 square foot lot spanning seven addresses. (R.R. at 261a-62a.) Tarnoff also expressed concerns about the "hidden street," "the whole fire trap thing[,]" looking down into yards from the rooftop decks, and the parties and trash that will occur as a result of the rooftop decks. (R.R. at 262a.) Tarnoff stated further that Moyer's ability to make money on the development of the Property should not come at the expense of the quality of life of the other people living in the neighborhood. (R.R. at 262a.) Tarnoff explained that she is not opposed to the neighborhood's development, but she does not want to have "this behemoth towering over [her property] with all the attendant grief

9

that's going to be there. . . . You don't have to take something that's not better just because the thing that's there is crappy. You have to hold out for the thing that works." (R.R. at 262a-63a.)

Jeffrey Young, a representative from Council President Darrell Clarke's office, and Larissa Klevan, a representative of the Philadelphia City Planning Commission (Planning Commission), were also present at the hearing held before the ZBA. Mr. Young stated that after "[s]peaking with various parties of interest, the Council President ha[d] no position on this variance." (R.R. at 267a.) Ms. Klevan represented that the Property "is indicated for industrial use on the comprehensive plan[,] but that the Planning Commission staff ha[d] no objection." (R.R. at 267a.)

On October 22, 2013, approximately four months after the ZBA hearing, Moyer submitted a further revised development plan for the Property to the ZBA. The revised development plan reduced the number of homes to eleven, consisted of two rows of attached homes (four row homes and two carriage units on the front of the Property and five row homes at the back of the Property), and increased the rear yard depth for the back row of homes to twelve feet. On that same day, the ZBA granted the requested use and dimensional variances, with the stipulation that the proposed project conform to the revised development plan submitted to the ZBA on October 22, 2013. In so doing, the ZBA summarized the witness testimony and evidence and made the following conclusions of law:

> 1. The residential development proposed by [Moyer] is not permitted in the Property's ICMX zoning district. The proposed development also does not meet applicable [Zoning] Code requirements for rear yard depth, aisle width and provision of accessible parking spaces. [Moyer's] proposal accordingly requires both use and dimensional variances. . . .

10

. . . .

5. The [ZBA] concludes that [Moyer] has satisfied the criteria set forth in [the Zoning] Code and that grant of the requested variances is therefore appropriate.

6. With respect to the variance for residential use, the [ZBA] notes that [Moyer] is seeking to redevelop a long vacant property that has fallen into a state of extreme disrepair. The Property is surrounded by residential properties and attempts to market it for industrial use were unsuccessful.

7. The evidence of record additionally establishes that the variances sought are the minimum necessary to afford relief. The [ZBA] accepts as credible and persuasive testimony indicating that the costs of remediating the site and demolishing the existing industrial structure make the number of units proposed the least necessary to make the project feasible.

8. The [ZBA] additionally finds that the project will not negatively impact the public health, safety or welfare. To the contrary, it will return a long vacant, blighted property to productive use and will establish a residential use compatible with the surrounding neighborhood.

9. The [ZBA] finds that [the Zoning] Code requirements for the remaining variances have also been satisfied.

10. With regard to the provision of an accessible space, the [ZBA] agrees that the requirement is more properly applied to industrial and commercial developments. Given [Moyer]'s willingness to provide one accessible space, however, this variance appears no longer to be at issue.

11. With regard to the variance for aisle width, [Moyer]'s revised plans increase the proposed width to 22 feet, a deviation of only 2 feet from the minimum required by [the Zoning] Code. The [ZBA] concludes that, in view of the revision, the requested variance is now de minimus, and that the requirements for grant of a dimensional variance are met.

12. Finally, with regard to the variance for rear yard depth, the [ZBA] finds that enforcement of the requirement for depth equaling twenty percent of lot size

11

would result in unnecessary hardship and that grant of the variance will not detrimentally impact the public health, safety or welfare.

13. To comply with the rear yard depth requirement, [Moyer] would have to provide a twenty feet deep rear yard. Given the size and configuration of this former industrial parcel, requiring a yard of that depth would unnecessarily constrain development of the remainder of the site. The evidence of record establishes that the rear yard depth proposed is consistent with residential development and will not negatively impact adjacent properties.

14. For all of the above stated reasons, the [ZBA] concludes that the requested variances are properly granted.

(ZBA Decision at 6-8.) Scott appealed to the trial court, and Intervenors intervened.

On October 14, 2014, Scott filed a motion for an evidentiary hearing (Motion) with the trial court, arguing that the ZBA record was incomplete because it lacked relevant evidence relating to the Property's ownership and contamination that contradicted the ZBA's decision.[12] (R.R. at 428a-543a.) Intervenors opposed the Motion, arguing that the ZBA's record was full and complete and that Scott had a full and fair opportunity to present evidence before the ZBA. (R.R. at 544a-64a.) On November 18, 2014, the trial court denied the Motion. (R.R. at 574a.) Subsequently, on February 6, 2015, after reviewing the ZBA's record and the parties' briefs, and hearing argument on December 23, 2014, the

---

[12] Scott also filed motions for extraordinary relief on April 28, September 30, and November 13, 2014, which are not at issue in this appeal.

12

trial court denied Scott's appeal.[13]  (*See* R.R. at 1a-41a, 745a.)  Scott then appealed to this Court.

On appeal,[14] Scott argues:  (1) the trial court erred by denying his Motion because newly discovered evidence unavailable at the time of the ZBA hearing contradicted the ZBA's findings; (2) the ZBA's finding of unnecessary hardship is not supported by substantial evidence; (3) the ZBA erred by concluding that any unnecessary hardship would result from a denial of the variances and was not of Intervenors' own making; and (4) the ZBA denied him his due process rights.[15]

We first address Scott's argument that the trial court erred by denying his Motion because newly discovered evidence unavailable at the time of the ZBA hearing contradicted the ZBA's findings.  More specifically, Scott contends that consideration of certain evidence—*i.e.*, Moyer's February 28, 2013 demolition permit for the Property; a March 11, 2013 mortgage recorded against the Property; a February 18, 2014 mortgage recorded against the Property; a July 2012 agreement of sale for the Property; and a federal lawsuit involving the Property—would likely have changed the ZBA's final determination and "it was entirely

---

[13] The trial court issued its opinion on May 18, 2015.  (R.R. at 759a-80a.)

[14] "Where a trial court takes no additional evidence in an appeal from a decision of the [ZBA], this Court is limited to considering whether the [ZBA] erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A [ZBA] abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

[15] By order dated September 17, 2015, this Court precluded the ZBA from filing briefs or participating in oral argument due to the ZBA's failure to file its brief in a timely manner.

unreasonable, if not impossible, for [him] to have known about [such] evidence prior to the ZBA hearing."[16] (Scott's Br. at 19.) In response, Intervenors argue that none of the issues raised by Scott in his Motion were mentioned or discussed at the ZBA hearing. Intervenors argue further that Scott "was afforded a full opportunity to be heard and the vast majority of the documents discussed by [Scott] were publically available to him prior to the ZBA[] hearing." (Intervenors' Br. at 9-10.)

---

[16] In his Motion, Scott references additional evidence that he alleges should be part of the record—*i.e.*, correspondence referenced by the ZBA in its decision; evidence/documentation indicating how Moyer submitted the October 22, 2013 revised development plans to the ZBA; the September 2013 version of the proposed development plans for the Property; the Department's refusals; and the September 24, 2014 Deed for Unit 10 in the Icehouse Development. Scott does not, however, address such evidence/documentation in his March 30, 2015 Statement of Matters Complained of on Appeal (1925(b) Statement) or his brief to this Court. As a result, any arguments relative to such evidence/documentation are deemed waived. *See* Pa. R.A.P. 1925(b)(4)(vii) ("Issues not included in the [1925(b)] Statement . . . are waived."); *McDonough v. Unemployment Comp. Bd. of Review*, 670 A.2d 749, 750 (Pa. Cmwlth. 1996) (holding that issue not raised in brief on appeal is waived).

Scott also raised in his Motion that despite the requirement set forth in Section 14-303(1)(c) of the Zoning Code that an equitable owner have written documentation of such equitable ownership, no written agreement evidencing that Baird and/or Moyer were the equitable owners of the Property was submitted into evidence at the ZBA hearing. While Scott questioned the Property's ownership and the ZBA's failure to obtain proof of the Property's ownership in his brief to this Court, Scott failed to properly preserve such issue on appeal because he failed to raise it in his 1925(b) Statement. *See* Pa. R.A.P. 1925(b)(4)(vii). "Standing is a non-jurisdictional and waivable issue." *Hous. Auth. of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209, 214 (Pa. Cmwlth. 2012). In addition, we note that while Section 14-303(1) of the Zoning Code permits equitable owners with written documentation thereof to file zoning applications, there is no requirement contained therein that such written documentation be submitted into evidence at the ZBA hearing. In addition, Scott did not raise this issue or object to Intervenors' failure to submit such documentation into the record at the time of the ZBA hearing. For all of these reasons, we will not address Scott's arguments relative to the ownership of the Property.

14

This Court has held that "[a] trial court faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party was denied the opportunity to be heard fully, or because relevant testimony was offered and excluded." *Berryman v. Wyoming Borough Zoning Hearing Bd.*, 884 A.2d 386, 388 n.2 (Pa. Cmwlth. 2005). In this case, the trial court stated:

> [Scott] raises a number of arguments as to why the findings of fact were 'contradictory' and incorrect to the point of requiring a hearing *de novo*. However, the majority of [Scott's] issues, including the demolition permit and mortgages, were not discussed at the hearing before the [ZBA]. Consequently, such arguments are waived on appeal both before this [trial c]ourt and before the Commonwealth Court of Pennsylvania. Similarly, though [Scott] challenges the lack of evidence of 'contamination,' testimony was given that the soil would need to be remediated and that it would be at great expense. The [ZBA], as fact-finder, is the sole judge of credibility; and [the ZBA] found this testimony credible and persuasive.
>
> Upon examination of the record, this [trial c]ourt found that it contained: the application for zoning/use registration permit, the notice of refusal, the application for appeal, the notice of decision, the notice of appeal scheduling a hearing date and time, a nine (9)[-]page long Findings of Fact and Conclusions of Law, the transcript of the hearing before [the ZBA] consisting of fifty-nine (59) pages of testimony from nine (9) witnesses and argument of counsel, building plans, photographs of the Property and surrounding neighborhood, and projections of the proposed construction. The total length of the certified record is two hundred thirty[-]six (236) pages.
>
> This [trial c]ourt was provided with sufficient facts and information to find that the record was not incomplete and no trial de novo was necessary in this case.

15

(Trial Ct. Op. at 15-16 (citations omitted).) Finding no error in the trial court's reasoning, and since Scott does not claim that the record was incomplete because he was denied the opportunity to be fully heard or that the ZBA excluded relevant evidence from the record, we hold that the trial court properly denied Scott's Motion. In addition, we must note that at least some of the documents that Scott references—*i.e.*, Moyer's February 28, 2013 demolition permit for the Property and a March 11, 2013 mortgage recorded against the Property—were publicly available to him prior to the ZBA hearing and were reasonably ascertainable by him upon a diligent search. For these reasons, we cannot conclude that the trial court committed an error of law by denying Scott's Motion.

Next, we address Scott's argument that the ZBA's finding of unnecessary hardship is not supported by substantial evidence. More specifically, Scott contends that the ZBA failed to identify any unnecessary hardship that would result if the requested use and dimensional variances were not granted because: (1) the ZBA improperly concluded that the Property was contaminated; (2) the ZBA failed to evaluate properly conforming uses for the Property; (3) the ZBA improperly concluded that the Property could not be sold for a conforming use; and (4) a July 2012 agreement of sale for the Property was concealed from the ZBA. In response, Intervenors argue that the ZBA's findings of unnecessary hardship are supported by the weight of the evidence.

"It is well-established that substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Adams Outdoor Adver., Ltd. v. Dep't of Transp.,* 860 A.2d 600, 605 n.8 (Pa. Cmwlth. 2004), *appeal denied*, 887 A.2d 1242 (Pa. 2005). "When performing a substantial evidence analysis, this Court must review the evidence in a light most

16

favorable to the party who prevailed before the fact finder." *Id.* Moreover, where "both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the factfinder, rather, the pertinent inquiry is whether there is any evidence which supports the factfinder's factual finding." *Mulberry Mkt., Inc. v. City of Phila., Bd. of License & Inspection Review,* 735 A.2d 761, 767 (Pa. Cmwlth. 1999). "An appellate court errs when it substitutes its judgment on the merits for that of [the ZBA]." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014).

A variance is a departure from the exact provisions of a zoning ordinance. *Brennen v. Zoning Bd. of Adjustment of the City of Connellsville*, 187 A.2d 180, 182 (Pa. 1963). "An applicant seeking a variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest." *Singer v. Phila. Zoning Bd. of Adjustment,* 29 A.3d 144, 148 (Pa. Cmwlth. 2011). "The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district." *Marshall*, 97 A.3d at 329. An applicant "is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Id.* at 330 (emphasis in original). Mere economic hardship, however, "'will not of itself justify a grant of a variance.'" *Id.* (quoting *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1069 (Pa. 2007)). In other words, evidence that the property's zoned use is less profitable than the property's proposed use is not sufficient to justify a variance. *Marshall*, 97 A.3d at 330. "The party seeking the variance bears the burden of proof." *Id.* at 329. "[T]he reasons for granting the variance must be substantial, serious and compelling." *Singer*, 29 A.3d at 149.

17

"When an applicant seeks a variance for a property located in Philadelphia, the [ZBA] must also consider the factors set forth in the [Zoning Code]. *Id.* at 148. Section 14-303(8)(e)(.1) of the Zoning Code sets forth specific criteria that must be satisfied before the ZBA can grant a variance. One of those criteria is that "[t]he denial of the variance would result in an unnecessary hardship" not created by the applicant. Zoning Code § 14-303(8)(e)(.1)(.a). With respect to a use variance, Section 14-303(8)(e)(.2) of the Zoning Code further requires that the ZBA make the following specific findings regarding unnecessary hardship:

> (.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

> (.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

> (.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

> (.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code § 14-303(8)(e)(.2). Similarly, with respect to dimensional variances, Section 14-303(8)(e)(.3) of the Zoning Code provides:

> To find an unnecessary hardship in the case of a dimensional variance, the [ZBA] may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

Zoning Code § 14-303(8)(e)(.3).

Here, Scott challenges the ZBA's finding of unnecessary hardship on four specific grounds.[17] First, Scott argues that the ZBA's finding that the Property was contaminated is contrived and "not supported by any evidence other than speculation by Intervenor[s]." (Scott's Br. at 21.) We disagree. The ZBA concluded that the costs associated with remediating the Property and demolishing the Property's existing structure made the number of proposed units the least necessary to make the project economically feasible. In support of this conclusion, the ZBA relied upon Baird's unrefuted testimony that: (1) the soil was contaminated and needed to be removed and remediated due to prior uses of the Property; and (2) based upon preliminary environmental findings, the clean-up costs

---

[17] The Concurrence/Dissent performs a rather detailed analysis of all of the requirements set forth in the Zoning Code that must be established to prove unnecessary hardship—*i.e.*, unnecessary hardship due to unique physical circumstances or conditions of the Property and whether the granting of a use variance would not be detrimental to public welfare—and concludes that our "ruling is contrary to well-established law and the Zoning Code because the ZBA failed to make specific findings on each of the Zoning Code's variance criteria." (Concurring/Dissenting Op. at 8.) As stated above, Scott challenged the ZBA's finding of unnecessary hardship on only four specific grounds. Those four specific grounds were the only challenges to the ZBA's finding of unnecessary hardship raised by Scott on appeal and, therefore, are the only grounds addressed in this opinion.

19

would be substantial and would exceed $100,000.00. Zimmers corroborated this testimony by explaining that Moyer had obtained a preliminary environmental report and environmental estimates. This testimony constitutes substantial evidence to support the ZBA's finding that the Property was contaminated, and, therefore, the ZBA's finding of contamination is not contrived.

Second, Scott argues that the ZBA did not properly evaluate potential conforming uses of the Property and relied solely on Bond's "unsworn, written, hearsay opinion testimony." (Scott's Br. at 24.) Again, we disagree. "Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding . . . [i]f it is corroborated by any competent evidence in the record." *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). In support of its finding that industrial development at the Property was not feasible, the ZBA relied on both Bond's letter and Maransky's corroborating testimony. In his letter, Bond opined: (1) industrial development is not feasible due to the surrounding residential uses, the Property's small lot size, the Property's condition and lack of infrastructure, and the Property's constrained boundaries; (2) Moyer Street is narrow and inadequate for bearing the type of traffic that an industrial use would generate; and (3) it is unlikely that someone would consider the Property for industrial use because there are more superior options available within a two-mile radius. In support of Bond's letter, Maransky testified that he had marketed the Property for sale for over a year, but there had been no interest in it for industrial purposes and almost every inquiry that he received was for residential development contingent on zoning. Bond's letter, as corroborated by Maransky's testimony, constitutes substantial evidence to support the ZBA's finding that it was not feasible to use the Property for a conforming

20

industrial purpose, and, therefore, the ZBA did not fail to properly consider potential conforming uses of the Property.

Third, Scott argues that the ZBA improperly concluded that the Property could not be sold for a conforming use because it was not sufficiently market tested. In support of his argument, Scott relies on *City of Philadelphia Zoning Board of Adjustment v. Earl Scheib Realty Corp.*, 301 A.2d 423 (Pa. Cmwlth. 1973), for the proposition that a "sustained market testing" standard must be applied to determine whether a property's conforming use is viable. (Scott's Br. at 28-29.) Scott, however, fails to acknowledge that in *Earl Scheib Realty*, this Court noted that while "inability to sell after a sustained and vigorous effort to do so is evidence that the [property] is not saleable for a permitted purpose[,]" that is not the only evidence that can be used to show that a property cannot be sold for a conforming use. *Earl Scheib Realty*, 301 A.2d at 426. Unnecessary hardship and infeasibility of use for a permitted/conforming purpose can also be established:

> (1) by a showing that the physical characteristics of the property were such that it could not in any case be used for [a] permitted purpose or . . . only be arranged for such purpose at a prohibitive expense; or (2) by proving that the characteristics of the area were such that the lot has either no value or only a distress value for any purpose permitted by the zoning ordinance.

*Id.* (citations omitted). In support of its findings that industrial development at the Property was not feasible, the ZBA relied on multiple factors including, but not necessarily limited to: (1) Maransky's unsuccessful attempts to sell the Property for industrial purposes for over a year; (2) Bond's opinion that industrial development is not feasible; and (3) the surrounding residential uses, the Property's small lot size, the Property's condition and lack of infrastructure, and

the Property's constrained boundaries.  This evidence, taken as a whole, constitutes substantial evidence to support the ZBA's findings that the Property could not be sold for a conforming purpose, and, therefore, we cannot conclude that the ZBA erred as a matter of law.

Lastly, Scott argues that the ZBA's finding regarding the salability of the Property is improper because Intervenors concealed a July 2012 agreement of sale for the Property from the ZBA.  Scott's argument is a red herring and must fail. The federal lawsuit upon which Scott bases his argument was filed in 2014, well after the ZBA considered Moyer's variance requests.  Thus, the evidence that Scott alleges contradicts the ZBA's findings was not available at the time of the ZBA hearing.  In addition, the trial court precluded Scott from introducing the July 2012 agreement into the record when it denied Scott's Motion, and we have already concluded that the trial court did not err in denying Scott's Motion as discussed more fully above.  Consequently, the July 2012 agreement is not part of the record and cannot be used to contradict the ZBA's findings.  Moreover, even if we were to consider the July 2012 agreement, such agreement is not simply for the Property's purchase as alleged by Scott.[18]  (*See* R.R. at 492a-514a.)  For these reasons, we cannot conclude that the ZBA's findings regarding the salability of the Property were improper in light of the July 2012 agreement.

In sum, after reviewing the evidence challenged by Scott in the light most favorable to Moyer, as we must, we conclude that the ZBA's finding that the

---

[18] While not part of the evidentiary record, the July 2012 agreement is part of the certified record, as it is attached to Scott's Motion.  (*See* R.R. at 505a-14a.)  This Court has reviewed the July 2012 agreement and disagrees with the characterization and weight given to it by Scott.

denial of Moyer's requests for use and dimensional variances would result in unnecessary hardship is supported by substantial evidence.

Next, we address Scott's argument that the ZBA erred by concluding that any unnecessary hardship would result from a denial of the variances and was not of Intervenors' own making. More specifically, Scott argues that no hardship arose until Intervenors neglected the Property and "Intervenor[s] ventured beyond conforming uses and dimensions, and beyond even a minimally variant non-conforming use." (Scott's Br. at 34.) Scott's argument is essentially one of substantial evidence—*i.e.*, that the ZBA's finding that the unnecessary hardship was not self-imposed is not supported by substantial evidence. In response, Intervenors argue that "the fact that the [Property] is not viable for an industrial use is not a self-imposed hardship by [Intervenors][,]" but rather, is "a condition arising from the gentrification of Fishtown and the changing demographic trends of Philadelphia, neither of which were caused by [Intervenors]." (Intervenors' Br. at 24-25.)

It is undisputed that "[t]he owner of the property cannot create a hardship and then request a variance to remedy same." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1228 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007); *see also* Zoning Code § 14-303(8)(e)(.1)(.a). Here, however, there is substantial evidence to support the ZBA's finding that Maransky and/or Moyer did not create the unnecessary hardship. The ZBA found: (1) the Property was last used as an auto salvage yard; (2) the steel structure located on the Property fell into a state of disrepair; (3) the Property, in its current condition, is a "blight on the neighborhood;" (4) the soil was contaminated and needed to be removed and remediated due to prior uses of the Property; (5) industrial development of the

23

Property is not feasible; and (6) the uses surrounding the Property are residential. These findings are supported by the testimony presented by Intervenors' witnesses at the ZBA hearing. The only evidence that suggests that Maransky and/or Moyer may be responsible for the Property's current condition is Scott's testimony that the Property was in a better condition before Intervenors began demolition and "*people* started importing truckloads of trash to the [P]roperty." (R.R. at 250a (emphasis added).) The ZBA rejected Scott's testimony in favor of Intervenors' witnesses' testimony, which it was permitted to do as the factfinder and sole judge of credibility. *See Nettleton v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 828 A.2d 1033, 1041 n.10 (Pa. 2003). In addition, there is no evidence in the record that the Property's current condition—*i.e.,* the dilapidated steel structure, the contaminated soil in need of remediation, and the "blight on the neighborhood"—or the factors making the Property unsuitable for industrial development—*i.e.*, the fact that industrial development is not feasible due to the surrounding residential uses, the Property's small lot size, the Property's condition and lack of infrastructure, and the Property's constrained boundaries—were created by Maransky and/or Moyer or their prior uses of the Property. For these reasons, the ZBA's finding that the unnecessary hardship was not self-imposed by Intervenors is supported by substantial evidence, and, therefore, the ZBA did not err as a matter of law.

Finally, we address Scott's argument that the ZBA denied him his due process rights. More specifically, Scott argues that his due process rights were violated because the ZBA: (1) sidestepped the procedural requirements of the Zoning Code by reviewing the revised development plan submitted to the ZBA on October 22, 2013, which revised development plan received less scrutiny because

24

it evaded review by the Department and the Civic Design Review Committee (CDRC)[19] and was never submitted to FNA; (2) failed to address the deficiencies contained in the Department's refusal with respect to subdivision requirements; (3) failed to make factual determinations as to each variance criterion; (4) cannot exempt the Property from accessibility requirements; (5) disregarded the Zoning Code's development restraints; and (6) made a finding that the drive aisle reduction was *de minimis*, which was not supported by the facts.

"In an administrative proceeding, the essential elements of [procedural] due process are notice and an opportunity to be heard." *Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1190 (Pa. Cmwlth. 2012). This Court has previously stated:

> The statutory notice and publication requirements are to ensure the public's right to participate in the consideration and enactment of municipal land use decisions. In other words, the notice provisions protect procedural due process. The concept of due process, however, is a flexible one and imposes only such procedural safeguards as the situation warrants. Demonstrable prejudice is a key factor in assessing whether procedural due process was denied.

*In re McGlynn*, 974 A.2d 525, 532 (Pa. Cmwlth. 2009) (citations omitted). As the trial court correctly pointed out, "the public hearing was advertised and held in accordance with [Zoning] Code [Section] 14-303(13)-(15). [Scott] appeared, represented by counsel, and participated in voicing his objections on the record. [Scott] filed an appeal to [the trial court] and participated in oral argument, again

---

[19] The CDRC is part of the Philadelphia City Planning Commission. Zoning Code § 14-203(69).

25

represented by counsel." (Trial Ct. Op. at 21.) In addition, Scott has failed to set forth or demonstrate how he was prejudiced by the alleged violation of his procedural due process rights. As a result, we cannot conclude that the ZBA violated Scott's procedural due process rights.

In addition, to the extent Scott is claiming that the ZBA violated his substantive due process rights, the Pennsylvania Supreme Court has explained "for substantive due process rights to attach[,] there must first be the deprivation of a property right or other interest that is constitutionally protected." *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004). Because Scott does not specify in this appeal which of his property rights or constitutionally-protected interests were violated by the ZBA, we cannot meaningfully review any claim for a violation of substantive due process rights.[20]

For the reasons set forth above, we affirm the trial court's order.

_____
P. KEVIN BROBSON, Judge

_____

[20] Because we have concluded that the ZBA did not violate Scott's procedural due process rights and cannot meaningfully review any claim for a violation of Scott's substantive due process rights, we need not individually consider the specific reasons Scott alleges his due process rights were violated. Nonetheless, the Court notes that Scott's challenge to the ZBA's review and approval of revised development plans that were not submitted to or reviewed by the Department is of no consequence. The revised development plans submitted to the ZBA at the time of the ZBA hearing on June 26, 2013, and subsequent to the ZBA hearing on October 22, 2013, seek the same use and dimensional variances and simply lessen the burden of the proposed project on Scott and other neighboring property owners by reducing the number of units and any non-conformities. Scott does not assert any further challenges to the revised development plans that were not present when the first development plans were submitted to the Department, except for the idea that the revised development plans exceed the size of the Property. This case involves a question of zoning and not whether the proposed project can actually be built within the Property's boundaries.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

John Scott, : 
                    Appellant : 
           : 
           v. :   No. 358 C.D. 2015
           : 
Zoning Board of Adjustment, : 
Moyer Street Associates, LLC, : 
and Kevin Baird : 

## **O R D E R**

AND NOW, this 13th day of April, 2017, John Scott's Application for Relief to Modify the Caption to Accurately Reflect the Parties in Interest is hereby DENIED, and the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge

John Scott, :
            Appellant : 
             :
             :
        v. :
             :
Zoning Board of Adjustment, :
Moyer Street Associates, LLC, : No. 358 C.D. 2015
and Kevin Baird : Argued: October 6, 2015


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge (P.)

OPINION NOT REPORTED

CONCURRING/DISSENTING
OPINION BY JUDGE COVEY          FILED: April 13, 2017


I concur with the Majority's rulings that Scott's due process rights were not violated, and that the trial court properly denied his Motion for an Evidentiary Hearing (Motion) relative to all but the ownership issue. However, I respectfully dissent from the Majority's conclusions that: (1) Scott failed to preserve the issue of the Property's ownership; (2) the ZBA's findings of unnecessary hardship were supported by substantial evidence; and, (3) hardship was not self-imposed because industrial development at the Property is not feasible and/or that the Property is contaminated. Accordingly, I would reverse the trial court's order as it relates to those issues.


## 1. **Property Ownership**

The Majority concluded that Scott waived his argument that the ZBA erred by not procuring "[w]ritten proof that [] Baird is the equitable owner or was otherwise entitled to obtain a zoning permit" for Moyer. R.R. at 435a, 449a; *see also*

Majority Op. at 14 n.16. Scott's March 30, 2015 Statement of Errors Complained of on Appeal (Statement) averred therein that the trial court

> erred when it denied Scott's [Motion] because, based on the circumstances, the [ZBA] created conclusions of law and findings of fact that were entirely made up and contradictory to the presented facts and he was effectively denied the opportunity to offer evidence relating to the ZBA's incorrect findings of fact.

R.R. at 746a-747a. The ZBA made fourteen Conclusions of Law. It is clear that Scott took issue with all those Conclusions that were based on the ZBA's Findings of Fact because they were not founded on substantial evidence and because he was denied the opportunity to present evidence to establish the same. Pennsylvania Rule of Appellate Procedure 1925(b)(4)(v) states, in relevant part: "Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court[.]" Pa.R.A.P 1925(b)(4)(v). The transcript of the trial court hearing reveals that Scott repeatedly brought Baird's status to the trial court's attention. In accordance with Rule 1925(b)(4)(v), Scott's Statement is "deemed to include" the subsidiary issue of Baird's status "which was raised in the trial court". *Id.* Moreover, to do otherwise, would abrogate this Court's responsibility to insure that Baird is legally authorized to affect the Property and, even worse, would grant Baird an ownership interest he may not actually possess.

This Court has held that "[a] trial court faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party was denied the opportunity to be heard fully, or because relevant testimony was offered and excluded." *Berryman v. Wyoming Borough Zoning Hearing Bd.*, 884 A.2d 386, 388 n.2 (Pa. Cmwlth. 2005). Here, the trial court stated, in relevant part:

> Appellant raises a number of arguments as to why the findings of fact were 'contradictory' and incorrect to the

point of requiring a hearing de novo. However, the majority of [Scott's] issues, including the demolition permit and mortgages, were not discussed at the hearing before the [ZBA]. Consequently, such arguments are waived on appeal both before this [trial c]ourt and before the Commonwealth Court of Pennsylvania. *1700 Columbus Assoc[s.], LLC v. City of [Phila.], Zoning Bd. of Adjustment*, 976 A.2d 1257 [] (Pa. [Cmwlth.] 2009). Similarly, though [Scott] challenges the lack of evidence of 'contamination,' testimony was given that the soil would need to be remediated and that it would be at great expense. N.T. 6/26/13 at 15-16, 28-29. The [ZBA], as fact-finder, is the sole judge of credibility; and [the ZBA] found this testimony credible and persuasive. *Marshall v. City of [Phila.]*, 97 A.3d 323 . . . (Pa. 2014).

Upon examination of the record, this [trial c]ourt found that it contained: the application for zoning/use registration permit, the notice of refusal, the application for appeal, the notice of decision, the notice of appeal scheduling a hearing date and time, a nine (9)[-]page long Findings of Fact and Conclusions of Law, the transcript of the hearing before [the ZBA] consisting of fifty-nine (59) pages of testimony from nine (9) witnesses and argument of counsel, building plans, photographs of the Property and surrounding neighborhood, and projections of the proposed construction. The total length of the certified record is two hundred thirty[-]six (236) pages.

This [trial c]ourt was provided with sufficient facts and information to find that the record was not incomplete and no [sic] trial de novo was necessary in this case.

Trial Ct. Op. at 15-16; R.R. at 773a-774a. However, **the trial court did not address the Property's ownership**.

Section 14-303(1) of **the Zoning Code requires**, in relevant part, **that zoning applications must be submitted by property owners, equitable owners** or other authorized individuals.[1] Zoning Code § 14-303(1). By intervening in the appeal to the ZBA, Moyer and Baird tacitly represented that they had legally

---

[1] The March 2013 variance application for the Property was filed by Zimmers, as authorized design professional for "Moyer Street Associates []." *See* R.R. at 201a.

enforceable interests therein.[2]  *See* R.R. at 45a-46a.  Moreover, at the ZBA hearing, Intervenors' counsel, Hercules Grigos (Grigos), represented that Baird was the Property's equitable owner with the authority to act on Moyer's behalf.  *See* R.R. at 78a-79a.

Under Pennsylvania law, "[e]xecution of a contract for the sale of realty vests equitable title to the realty in the purchaser.  The seller retains legal title only as a security against the purchase price."  *Posel v. Redevelopment Auth. of the City of Phila.*, 456 A.2d 243, 246 n.4 (Pa. Cmwlth. 1983) (citations omitted).  Accordingly, "an equitable owner under a conditional contract to purchase stands in the same position as a legal owner in seeking a variance for the same purpose."  *Logan Square Neighborhood Ass'n v. Zoning Bd. of Adjustment of the City of Phila.*, 379 A.2d 632, 634 (Pa. Cmwlth. 1977) (quoting *O'Neill v. Phila. Zoning Bd. of Adjustment*, 120 A.2d 901, 905 (Pa. 1956)).  **The burden of establishing equitable ownership with sufficient interest to seek zoning relief is upon the party claiming that status**.  *See Borough of Braddock v. Allegheny Cnty. Planning Dep't*, 687 A.2d 407 (Pa. Cmwlth. 1996); *see also Radnor Dev. Co., LP v. Bd. of Supervisors of Hereford Twp.* (Pa. Cmwlth. No. 556 C.D. 2011, filed February 7, 2012).[3]

---

[2] The Pennsylvania Rule of Civil Procedure No. 2327 states, in pertinent part:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> . . . .
>
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

[3] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414.

"While the [zoning hearing b]oard has discretion in interpreting its zoning regulations, it must adhere to the words of the Zoning Code." *Riverfront Dev. Grp., LLC v. City of Harrisburg Zoning Hearing Bd.*, 109 A.3d 358, 367 (Pa. Cmwlth. 2015). Accordingly, "[a] zoning hearing board must enforce the terms of a zoning code as written . . . ." *Id.* at 365. Section 14-303(1)(c)(.1) of **the Zoning Code expressly requires that an equitable property owner must have written documentation of equitable ownership** from the legal owner.[4]

Here, despite Intervenors' failure to produce written documentation or testimony of Baird's equitable authority, the ZBA made the finding that "Baird . . . [is] the Property's equitable owner[.]" ZBA Finding of Fact 27; *see* R.R. at 193a. Based upon a thorough review of the record, the only support for the ZBA's finding would be Grigos' representation which, because it was not evidence,[5] is insufficient to support a finding of Baird's equitable ownership under Section 14-303(1)(c)(.1) of the Zoning Code.[6]

---

[4] Section 14-303(1)(c)(.1) of the Zoning Code provides:

> [W]henever the legal owner of real property is authorized to file an application under this Zoning Code, that **application may also be filed by**:
>
> (.a) **Any person** or entity **with written documentation of equitable ownership** of that real property.
>
> . . . .
>
> (.c) **Any person** or entity, other than a real estate agent, but including a tenant or licensed contractor, **with signed written authorization from the legal owner**, equitable owner, or conservator of the property . . . .

Zoning Code § 14-303(1)(c)(.1) (emphasis added).

[5] *See Brady v. Workers' Comp. Appeal Bd. (Morgan Drive Away, Inc.)*, 923 A.2d 529 (Pa. Cmwlth. 2007) (counsel's statements at an administrative proceeding are not evidence).

[6] Baird never responded to Scott's repeated references to the question of Baird's ownership interest in the Property. Moyer responded, stating that its ownership is undisputed. *See* R.R. at 550a, 572a; *see also* Intervenors' Br. at 1, 10.

Moreover, the record lacks any proof that Baird was otherwise authorized to represent Moyer relative to its application. According to Section 14-303(1)(c)(.2) of the Zoning Code,[7] persons hired to represent owners and equitable owners before the ZBA must have an expediter's license issued by the Department. Zoning Code § 14-303(1)(c)(.2). Section 9-2202(2) of The Philadelphia Code waives the expediter's license requirement *if* the representatives are, *inter alia*, Pennsylvania-licensed attorneys "acting within the scope of their licensed practice area," or a "real estate agent or broker currently practicing under a valid real estate license in Pennsylvania . . . ."[8] The Philadelphia Code § 9-2202(2).

---

[7] Section 14-303(1)(c)(.2) of the Zoning Code states:

> Except as provided in [Section] 9-2202 of The Philadelphia Code, no person or entity other than a legal owner, equitable owner, conservator, or tenant of the property shall file an application under this Zoning Code without first obtaining an expediter's license from [the Department] . . . .

Zoning Code § 14-303(1)(c)(.2).

[8] Section 9-2202(2) of The Philadelphia Code (relating to expediter license exceptions) states:

> (a) The following licensed professionals, **when acting within the scope of their licensed practice area**, shall not be subject to the provisions of this Chapter: **attorneys currently licensed to practice law in Pennsylvania**; architects currently licensed to practice architecture in Pennsylvania; engineers currently licensed to practice engineering in Pennsylvania; and landscape architects currently licensed to practice landscape architecture in Pennsylvania.
>
> . . . .
>
> (d) The provisions of this Chapter shall not apply to a **real estate agent or broker currently practicing under a valid real estate license in Pennsylvania** seeking property licenses or certificates.

The Philadelphia Code § 9-2202(2) (emphasis added).

AEC - 6

There was no written documentation or even testimony to support Grigos' representation that Baird was the Property's equitable owner, that the owner hired Baird as a licensed expediter, that Baird is an attorney "acting within the scope of [his] licensed practice area," or that Baird is a real estate agent or broker currently practicing under a valid real estate license in Pennsylvania. The Philadelphia Code § 9-2202(2). Intervenors offered no evidence or any basis to substantiate Baird's authority over the Property, and the Zoning Code in addition to the well-established law mandate a legal interest in property in order to affect its disposition.

"A zoning board has a duty to make essential findings of fact sufficient to support its conclusions [and, i]n the absence of such findings, the court may remand the matter to the board so that it can fulfill that duty." *Domeisen v. Zoning Hearing Bd. of O'Hara Twp.*, 814 A.2d 851, 860 (Pa. Cmwlth. 2003). Scott repeatedly raised this ownership issue to the trial court.[9] Notwithstanding, the trial court's February 6, 2015 order summarily denied Scott's appeal without addressing the ownership issue. In the trial court's May 18, 2015 opinion, the trial court, without any substantial evidence, concluded that Maransky has been the Property's "owner . . . since 2007," and that Baird is the Property's equitable owner.[10] Trial Ct. Op. at 3.

Where, as here, the ZBA failed to make required findings and made findings that were not based upon substantial evidence, it abused its discretion, and the trial court erred by upholding the ZBA's determination that Baird is the Property's equitable owner. Accordingly, I would reverse the trial court's order and

---

[9] After Scott's Motion was denied, he filed a brief with the trial court on the merits in which he again questioned Baird's interest. *See* R.R. at 575a-576a. On December 1, 2014, Scott filed a post-argument brief on the merits with the trial court, *see* R.R. at 575a-638a, wherein he reiterated there is no proof that Baird was the Property's equitable owner. *See* R.R. at 575a-578a.

[10] Despite Moyer's admission that Intervenor is, in fact, Moyer Street Associates, LP, the trial court nevertheless designated in its opinion that Intervenor is "Moyer Street Associates, LLC." Trial Ct. Op. at 1.

vacate the ZBA's determination that Baird is the Property's equitable owner or was otherwise entitled to obtain Moyer's zoning/use registration permit.

## 2. Unnecessary Hardship

The Majority concluded that substantial evidence supported the ZBA's findings that the denial of Moyer's requests for use and dimensional variances would result in unnecessary hardship. *See* Majority Op. at 22. However, this ruling is contrary to well-established law and the Zoning Code because the ZBA failed to make specific findings on each of the Zoning Code's variance criteria as precedent and the Zoning Code mandates, and the ZBA's findings are based on Baird and Maransky's testimony which in no manner constitutes substantial evidence.

The Pennsylvania Supreme Court has made clear that "the authority of a zoning board to act arises exclusively from the ordinance and the enabling statute and the language of both demarcates [its] jurisdiction . . . ." *Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.*, 207 A.2d 890, 893-94 (Pa. 1965). In this case, Section 14-103(4)(a) of the Zoning Code provides that the ZBA "may, after public notice and public hearing . . . [a]uthorize variances from the terms of this Zoning Code[.]" Zoning Code § 14-103(4)(a).

> An applicant seeking a variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest. *Valley View Civic [Ass'n] v. Zoning [Bd.] of Adjustment, . . .* 462 A.2d 637 ([Pa.] 1983). **When an applicant seeks a variance for a property located in Philadelphia, the [ZBA] must also consider the factors set forth in the [Zoning Code].** *Wilson v. Plumstead [Twp.] Zoning Hearing [Bd.], . . .* 936 A.2d 1061 ([Pa.] 2007).

*Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148 (Pa. Cmwlth. 2011) (emphasis added).

Section 14-303(8)(e) of the Zoning Code sets forth the ZBA's variance approval criteria:

> **The [ZBA] shall grant a variance only if** it determines that [Moyer] has demonstrated that the criteria of [Section] 14-303(8)(e) [of the Zoning Code] (Criteria for Approval) have been met and that any applicable criteria in [Section] 14-303(8)(f) [of the Zoning Code] (Additional Criteria for Floodplain Variances) through [Section]14-303(8)(h) [of the Zoning Code] (Additional Criteria for Height Variances Near the Airport) have been met. Otherwise, the [ZBA] shall deny the variance.
>
> (.1) **General Criteria.**
>
> The [ZBA] may grant a lesser variance than requested, and may attach such reasonable conditions and safeguards as it may deem necessary to implement this Zoning Code, including without limitation a limitation on the size or duration of the variance, consistent with [Section] 14-303(9) [of the Zoning Code] (Conditions on Approvals). The [ZBA] shall, in writing, set forth each required finding for each variance that is granted, set forth each finding that is not satisfied for each variance that is denied, and to the extent that a specific finding is not relevant to the decision, shall so state. Each finding shall be supported by substantial evidence. If the [ZBA] chooses to view the subject property as part of the hearing, the [ZBA] must provide due process. Reports of other City agencies made as a result of inquiry by the [ZBA] shall not be considered hearsay. Upon request of any party, the [ZBA] may compel the attendance of the City agency. The [ZBA] shall grant a variance only if it finds each of the following criteria are satisfied:
>
> (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Section] 14-303(8)(e)(.2) [of the Zoning Code] (Use Variances) below, in the case of use variances, or the criteria set forth in [Section] 14-303(8)(e)(.3) [of the Zoning Code] (Dimensional Variances) below, in the case of dimensional variances, have been satisfied;

(.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue; [Section] 102 [of the Zoning Code;]

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)[11] (text emphasis added). This Court has summarized:

In essence, an **applicant seeking a variance pursuant to the [Zoning Code] must demonstrate** that: (1) the denial of the variance will result in **unnecessary hardship unique to the property**; (2) the variance **will not adversely impact the public interest**; and (3) the variance is **the minimum variance necessary** to afford relief. *Hertzberg*

_____

[11] The variance criteria list referenced in the ZBA's decision appears to paraphrase that which actually appears in Section 14-303(8)(e) of the Zoning Code. *See* R.R. at 195a-196a. Herein, we specifically quote Section 14-303(8)(e) of the Zoning Code.

[*v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)]. The **burden on an applicant** seeking a variance **is a heavy one**, and the reasons for granting the variance must be substantial, serious and compelling. *Valley View*.

*Singer*, 29 A.3d at 149 (emphasis added). Without making the required findings, the ZBA in this case concluded that Moyer "has satisfied the criteria set forth in [T]he Philadelphia Code[,] and that grant of the requested variances is therefore appropriate." ZBA Dec. at 7, ¶ 5; R.R. at 196a.

## ZBA Hearing Testimony

At the ZBA hearing, Maransky testified that he has been the Property's legal owner/seller since 2007. He stated that he purchased the Property through an assignor for between $600,000.00 and $700,000.00. He represented that he had the Property on the market for over a year for $800,000.00, but there was "no interest [in it] as an industrial site. Almost every inquiry was for residential development, and any offers came contingent on zoning." R.R. at 78a.

Baird testified that the steel structure must be removed and, since he believed the Property's prior uses were as a salvage yard and, "I think . . . some kind of paint factory," "the soil has got to be removed and remediated." R.R. at 79a. Baird explained that the clean-up costs will be unknown until the soil is removed, but he estimated based upon preliminary environmental findings that they would exceed $100,000.00, and possibly $200,000.00. *See* R.R. at 92a. Moyer's architect Liz Zimmers (Zimmers) represented to the ZBA that Moyer "had a preliminary environmental report," R.R. at 92a, and "some preliminary estimates," but that Moyer "would typically wait until [it is] close to construction to get an actual full environmental report done." R.R. at 93a.

Also in support of the requested use variance, Moyer referenced Bond's letter, in which Bond opined that industrial development at the Property is not feasible due to the small lot size and constrained boundaries, its lack of infrastructure, its condition and the surrounding residential uses. *See* R.R. at 215a, 270a-271a, 340a-342a. He also stated that Moyer Street's narrow nature makes it inadequate for bearing the type of traffic an industrial use would generate. Bond further contended that "[i]t is highly unlikely that anyone would consider [the Property] for industrial use when there are so many superior alternatives available" within a two-mile radius of the site. R.R. at 271a, 341a.

Scott testified, in relevant part, that "the City has the [P]roperty listed as sold in 2010 for only [$]340,000[.00]." R.R. at 121a. According to the City's property assessment record, the Property was purchased in 2008 for $350,000.00. *See* R.R. at 382a.

## Analysis

"It is the function of the [ZBA] to determine whether the evidence satisfies the criteria for granting a variance." *Marshall*, 97 A.3d at 331. Section 14-303(8)(e)(.2) of the Zoning Code requires:

> **To find an unnecessary hardship in the case of a use variance, the [ZBA] must make *all* of the following findings**:
>
> (.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code § 14-303(8)(e)(.2) (emphasis added). With respect to dimensional variances, Section 14-303(8)(e)(.3) of the Zoning Code provides:

To find an unnecessary hardship in the case of a dimensional variance, the [ZBA] may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

Zoning Code § 14-303(8)(e)(.3).

Based upon Moyer's evidence, the ZBA held:

5. The [ZBA] concludes that [Moyer] has satisfied the criteria set forth in [the Zoning] Code and that grant of the requested variances is therefore appropriate.

6. With respect to the variance for residential use, the [ZBA] notes that [Moyer] is seeking to redevelop a long vacant property that has fallen into a state of extreme disrepair. The Property is surrounded by residential properties and attempts to market it for industrial use were unsuccessful.

7. The evidence of record additionally establishes that the variances sought are the minimum necessary to afford relief. The [ZBA] accepts as credible and persuasive testimony indicating that the costs of remediating the site

AEC - 13

and demolishing the existing industrial structure make the number of units proposed the least necessary to make the project feasible.

8. The [ZBA] additionally finds that the project will not negatively impact the public health, safety or welfare. To the contrary, it will return a long vacant, blighted property to productive use and will establish a residential use compatible with the surrounding neighborhood.

9. The [ZBA] finds that [the Zoning] Code requirements for the remaining variances have also been satisfied.

10. With regard to the provision of an accessible space, the [ZBA] agrees that the requirement is more properly applied to industrial and commercial developments. Given [Moyer]'s willingness to provide one accessible space, however, this variance appears no longer to be at issue.

11. With regard to the variance for aisle width, [Moyer]'s revised plans increase the proposed width to 22 feet, a deviation of only 2 feet from the minimum required by [the Zoning] Code. The [ZBA] concludes that, in view of the revision, the requested variance is now de minim[i]s, and that the requirements for grant of a dimensional variance are met.

12. Finally, with regard to the variance for rear yard depth, the [ZBA] finds that enforcement of the requirement for depth equaling twenty percent of lot size would result in unnecessary hardship and that grant of the variance will not detrimentally impact the public health, safety or welfare.

13. To comply with the rear yard depth requirement, [Moyer] would have to provide a twenty feet deep rear yard. Given the size and configuration of this former industrial parcel, requiring a yard of that depth would unnecessarily constrain development of the remainder of the site. The evidence of record establishes that the rear yard depth proposed is consistent with residential development and will not negatively impact adjacent properties.

14. For all of the above stated reasons, the [ZBA] concludes that the requested variances are properly granted.

ZBA Dec. at 6-8; *see* R.R. at 195a-197a. The trial court agreed.

Our Supreme Court has declared that "[t]he **failure of a zoning board to consider each requirement of a zoning ordinance prior to granting a variance is an error of law**."[12] *Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 672 A.2d 286, 289-90 (Pa. 1996) (emphasis added). Moreover, Section 14-303(8)(e)(.1) of **the Zoning Code mandates** that "[e]ach finding shall be supported by substantial evidence." Zoning Code § 14-303(8)(e)(.1). "Substantial evidence is such relevant evidence as a reasonable mind might consider as adequate to support a conclusion." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth. 2007).

## Zoning Code Section 14-103(8)(e)(.2)(.a)
### Unnecessary hardship due to unique physical circumstances or conditions

Pursuant to Section 14-103(8)(e)(.2)(.a) of the Zoning Code, in order to conclude that unnecessary hardship warrants a use variance, the ZBA was required to make a finding that the hardship is due to physical circumstances or conditions

---

[12] The Majority takes issue with the Concurring/Dissenting Opinion's (CO/DO) detailed analysis of the ZBA's failure to make specific findings based on substantial evidence for each of the Zoning Code's unnecessary hardship criteria. The Majority specifically asserts that the CO/DO analysis goes beyond the scope of Scott's appeal. However, because the CO/DO is in direct response to the Majority's conclusion that substantial evidence supported the ZBA's findings that the denial of Moyer's variance requests would result in unnecessary hardship, *see* Majority Op. at 22, the CO/DO does not exceed what Scott placed before this Court for review.

Moreover, while apparently conceding that the ZBA did not fulfill its obligation to make all necessary findings as a condition precedent to granting the variance in this case, the Majority would have this Court review the ZBA's decision with tunnel vision. However, the City's legislative body and our Supreme Court have declared the ZBA must in every case determine whether the evidence satisfies the Zoning Code's criteria before granting a variance. Zoning Code § 14-303(8)(e); *Marshall*. Section 14-303(8)(e)(.2) of the Zoning Code even more specifically requires that "[t]o find an unnecessary hardship . . . , the [ZBA] must make *all* of the . . . findings" specified therein. Zoning Code § 14-303(8)(e)(.2). Because the ZBA's failure to make findings on all of the criteria specified by the Zoning Code constitutes an error of law, *Larsen*, this Court's scope of review is plenary. *Bagwell v. Dep't of Educ.*, 103 A.3d 409 (Pa. Cmwlth. 2014).

unique to the Property. *See* Zoning Code § 14-303(8)(e)(.2)(.a). Here, the ZBA made findings that the Property is zoned for industrial use within a residential area, *see* Findings of Fact (FOF) 5, 9; R.R. at 191a, that "[a]fter becoming vacant, the structure at the Property fell into a state of disrepair[,]" FOF 7; R.R. at 191a, and that "Bond opined that industrial development was not feasible at the Property," due to its small lot size, its lack of infrastructure, its constrained boundaries, and the surrounding residential uses and narrow streets. FOF 24; R.R. at 191a-192a.

The ZBA did not, however, make a specific finding that the Property was subject to unique physical circumstances or conditions that created an unnecessary hardship.[13] Notwithstanding, it is clear based upon the record that every property in the subject neighborhood is limited by the same constrained size, surrounding residential uses and narrow streets and, thus, there is nothing unique about the Property's physical circumstances or conditions.

**Zoning Code Section 14-303(8)(e)(.2)(.b)**
**Property cannot be used in strict conformity with the Zoning Code, and a variance is necessary for its viable economic use**

In order to find an unnecessary hardship, Section 14-303(8)(e)(.2)(.b) of the Zoning Code required the ZBA to make a finding supported by substantial evidence that the Property cannot be used in strict conformity with the Zoning Code, and that a variance is necessary for the Property's viable economic use. According to Zoning Code Table 14-602-3, permitted uses at the Property include, *inter alia*, a daycare, fraternal organization, business or professional office, restaurant, retail sales location, gas station, warehouse, recreation area or community garden. *See* Zoning

---

[13] In fact, the ZBA did not use the words "unique" or "hardship" anywhere in its findings of fact. *See* FOFs 1-45; R.R. at 190a-195a. In its conclusions of law (COL), the ZBA referenced those terms only when citing relevant law, *see* COL 3(a)-4, 3-4; R.R. at 195a-196a, and relative to the rear yard dimensional variance. *See* COL 12; R.R. at 196a.

AEC - 16

Code Table 14-602-3.  Moyer did not present any evidence to establish that it could not put the Property to one of those conforming uses.

The ZBA concluded that "attempts to market [the Property] for industrial use were unsuccessful."  ZBA Dec. at 7; R.R. at 196a.  The only findings the ZBA made to support that conclusion were based upon Maransky's declaration that there had been no interest in the Property as an industrial site during the year he had it listed for sale, *see* FOF 26; R.R. at 193a, and Bond's letter claiming that industrial development at the Property is not feasible.  *See* FOF 24; R.R. at 192a-193a.  However, the record does not contain substantial evidence to support those findings.

Bond's opinion is not substantial evidence that the Property cannot be used in strict conformity with the Zoning Code for several reasons.  First, Bond did not testify before the ZBA.  Second, as the ZBA hearing commenced, Grigos stated: "I want to call your attention to a few things.   Number one, we consulted with a broker who just gave us a letter . . . [that] said[,] based on the character of the neighborhood, the location of this [P]roperty, industrial use would not be feasible." R.R. at 72a; *see also* R.R. at 22a, 37a.  Grigos did not reference Bond's name or that the letter was going to be submitted to the ZBA.  Rather, Bond's letter was included in a packet of documents that Moyer referenced at the conclusion of the June 26, 2013 ZBA hearing.  *See* R.R. at 124a, 267a.  Thus, Bond's letter was not admitted into evidence, and Scott did not know to object to Bond's letter at that time.[14]

---

[14] Bond's letter was dated June 25, 2013.  The hearing took place on June 26, 2013.  It is unclear from the record whether Scott's counsel was afforded the opportunity to examine the letter and/or object to its submission.  Scott's counsel mentioned during the December 23, 2015 trial court argument that Moyer "brought in the letter from . . . Bond, which they slipped into the record . . . on the day before the hearing so that . . . everyone would have to -- really would have had to gone and -- they didn't raise -- they referred to it casually during their testimony."  R.R. at 22a; *see also* R.R. at 37a.

"[T]he formal rules of evidence do not apply in local zoning board meetings[.]" *Zitelli v. Zoning Hearing Bd. of Borough of Munhall*, 850 A.2d 769, 771 n.2 (Pa. Cmwlth. 2004). However, the law is well established that "[h]earsay evidence, *admitted without objection*, will be given its natural probative effect and may support a finding . . . **if it is corroborated** *by any competent evidence in the record*, but a finding of fact based *solely* on hearsay will not stand." *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976) (bold emphasis added). This Court has specifically held that hearsay "**must be sufficiently corroborated** by other evidence in order to be considered competent evidence." *Lake Adventure Cmty. Ass'n, Inc. v. Dingman Twp. Zoning Hearing Bd.*, 79 A.3d 708, 714 n.4 (Pa. Cmwlth. 2013) (emphasis added).

The only record evidence that could potentially corroborate Bond's letter was Maransky's testimony that no buyer has been interested in purchasing the Property "as an industrial site."[15] R.R. at 78a; *see also* R.R. at 78a-83a. However, Maransky's testimony is not competent to support the ZBA's finding that the Property cannot be used in strict conformity with the Zoning Code. First, Maransky could not recall precisely when the Property was listed for sale, how long it remained listed or its list price. *See* R.R. at 81a. Second, Moyer listed the Property **only** for industrial use and not for any of the other permitted uses. Third, if Moyer listed the unimproved, blighted Property for sale at $450,000.00 **more than** its purchase price, the Property's ICMX zoning may not have been the reason the Property did not sell as listed. Under the circumstances, Maransky's testimony did not corroborate Bond's letter and, thus, Bond's letter is impermissible hearsay. Accordingly, Bond's letter is not substantial evidence that the Property cannot be used in strict conformity with the Zoning Code, and that a variance is necessary for the Property's viable economic use.

---

[15] Although Moyer's inability to sell the Property is probative of its value as zoned, listing the Property for sale was not a variance prerequisite. *Marshall*.

In addition, the ZBA's finding that the Property had been the site of industrial uses for years belies the conclusion that it cannot be used in strict conformity with the Zoning Code, and that a variance is necessary for the Property's viable economic use. Specifically, the ZBA made findings that "[t]he Property was last used [by Moyer Logistics, Inc.] as an auto salvage yard[, and t]he prior business was housed in an industrial structure that covered [100%] of the lot." FOF 6; R.R. at 191a. The ZBA also found, based on Baird's testimony, that the Property may once have been the site of "some kind of paint factory."[16] FOF 28 (quotation marks omitted); R.R. at 193a. This Court has held that a variance is not justified where a property is put to a reasonable use as zoned. *Wilson*; *see also Vacca v. Zoning Hearing Bd. of the Borough of Dormont*, 475 A.2d 1329 (Pa. Cmwlth. 1984). Thus, the fact that the Property is zoned ICMX in a predominantly residential area does not alone establish an unnecessary hardship.

Further, the ZBA's conclusion that the proposed number of residential units was the minimum necessary to make Moyer's project feasible in light of significant demolition and remediation costs is also not supported by substantial evidence. *See* COL 7; R.R. at 196a. The ZBA made a finding based upon Baird's testimony that the Property's former uses "resulted in soil contamination" necessitating remediation that "would exceed $100,000[.00]."[17] FOF 28; R.R. at

---

[16] Scott called this claim into doubt, but he did not offer any contradictory evidence, nor did Perone or Tarnoff who have lived adjacent to the Property for at least 30 years and testified before the ZBA. Baird informed the ZBA that Maransky could speak to the Property's prior use as a paint factory; however, Maransky never addressed that issue. *See* R.R. at 79a, 222a.

[17] The ZBA deemed credible Baird's testimony regarding the estimated demolition and remediation costs. "[T]he [ZBA] is the fact finder, with exclusive province over matters of credibility and weight to be afforded the evidence." *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of City of Phila.*, 815 A.2d 652, 658 (Pa. Cmwlth. 2002). "Moreover, this Court will not engage in fact finding or disturb the [ZBA's] credibility determinations on appeal." *Id.* However, despite that the Board deemed Baird's testimony credible, it was not sufficient to support the ZBA's finding.

193a. However, the ZBA's finding acknowledged that Baird merely "suggested" that such former uses caused contamination. *See id.* Baird admitted that such costs would be unknown until the soil is removed. *See* R.R. at 92a. Zimmers represented that Moyer "had a preliminary environmental report," R.R. at 92a, and "some preliminary estimates," R.R. at 93a, yet Moyer did not produce them. In addition, Moyer objected to Scott's counsel's question to Baird: "[H]ow much are you planning to sell each unit for?" R.R. at 94a.

While demolition costs related to the remaining steel structure's removal are inevitable for any use at the Property,[18] the need for extensive soil remediation due to contamination, and whether the proposed residential construction is the minimum necessary to make the project economically feasible, is not evident. This Court has held that a variance applicant need not produce expert testimony where the zoning code does not expressly require such proof. *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549 (Pa. Cmwlth. 2014). Notwithstanding that the Zoning Code does not expressly require expert proof of the Property's contamination and its remediation costs, the Zoning Code does require that substantial evidence support the ZBA's findings. Zoning Code § 14-303(8)(e)(.1).

Baird could not estimate the extent of the Property's purported contamination and, thus, had no basis on which to estimate clean-up costs. Under the circumstances, Baird's representations hardly qualify as "such relevant evidence as a reasonable mind might consider as adequate to support a conclusion," and, thus, are not substantial evidence of Moyer's contamination claims. *Arter*, 916 A.2d at 1226 n.9. By extension, the ZBA's conclusion that the proposed number of residential units was the minimum necessary to make Moyer's project feasible in light of significant demolition and remediation costs is not supported by substantial evidence.

---

[18] Moyer did not state what the demolition costs would be.

AEC - 20

Based on the foregoing, the ZBA failed to make findings supported by substantial evidence that the Property cannot be used in strict conformity with the Zoning Code and that a variance is necessary for its viable economic use, as required by Section 14-303(8)(e)(.2)(.b) of the Zoning Code to establish unnecessary hardship.

**Zoning Code Section 14-103(8)(e)(.2)(.c)**
**Granting of a use variance would not alter the neighborhood's essential character, impair adjacent property, or be detrimental to the public welfare**

Under Section 14-103(8)(e)(.2)(.c) of the Zoning Code, in order to find an unnecessary hardship, the ZBA was required to make a finding that the granting of a use variance would not alter the neighborhood's essential character, impair the use or development of adjacent property, or be detrimental to the public welfare. *See* Zoning Code § 14-303(8)(e)(.2)(.c). The ZBA made findings related to the Property's dilapidated condition and the surrounding uses and concluded that, "[w]ith respect to the variance for residential use, . . . [Moyer] is seeking to redevelop a long[-]vacant property that has fallen into a state of extreme disrepair. The Property is surrounded by residential properties[.]" COL 6; R.R. at 196a; *see also* FOFs 7-9; R.R. at 191a. The ZBA also found that this Court, in *Poole v. Zoning Board of Adjustment of the City of Philadelphia*, 10 A.3d 381 (Pa. Cmwlth. 2010), "upheld the [ZBA]'s grant of a use variance for the proposed residential use[.]" FOF 10; R.R. at 191a.

Moyer seeks to have this Court "take note," Intervenors' Br. at 17, of its holding in *Poole* "that the [ZBA]'s findings that the variance is not out of character with the general neighborhood and not contrary to public interest[.]" R.R. at 361a. Although the *Poole* Court's statement is not controlling in this matter,[19] the record in

---

[19] The approval of the 2008 variance request for the Property's residential use in *Poole* is not binding on the ZBA relative to the 2013 application before us.

the instant case contains substantial evidence to support the ZBA's conclusion that

> [*R*]*es judicata* will bar re[-]litigation of a request for a variance if four elements concur: (1) the identity of the thing sued for; (2) the identity of the cause of action; (3) the identity of the persons and parties to the action; and (4) the identity of the quality in the persons for or against whom the claim is made, and then, only if there are no substantial changes in circumstances relating to the land itself. . . .
>
> In addition, the doctrine of *res judicata* subsumes the doctrine of collateral estoppel, which forecloses re-litigation in a later action of an issue of fact or law that was actually litigated and was necessary to the original judgment. Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Callowhill Ctr. Assocs., LLC v. Zoning Bd. of Adjustment*, 2 A.3d 802, 809 (Pa. Cmwlth. 2010) (citation omitted).

In *Poole*, Poole, Scott, Perone and Tarnoff objected to an application by **Moyer Logistics, Inc.** for a variance to develop the Property, then zoned **L-4 Limited Industrial surrounded by an R-10A Residential District**, with **8 structures** containing 14 residential units (6 four-story buildings approximately 46 feet in height, and 2 three-story buildings up to 35 feet tall) with accessory roof decks, and **14 garage parking spaces**. *Id.* The application was denied because residential use was prohibited in the L-4 District, the Zoning Code prohibited multiple structures on a single lot, the L-4 zoning required 2 off-street loading spaces, and the rear yard depth was too small under the Zoning Code's residential district requirements. *Id.* The ZBA granted the variances, and the trial court affirmed. **Scott appealed only the ZBA's grant of the multiple structure, loading space and rear yard depth issues** to this Court. Therein, this Court stated the ZBA properly granted the variance for residential use. *Id.* at 385. However, since that issue was not before the Court, its statement represented dicta, rather than a holding.

Because the **use variance was not before the *Poole* Court**, and the 2013 variance application was made by **Moyer Street Associates, LP.** for **dissimilar residential construction** (14 three-story residences consisting of two rows of seven homes with single-car garages and 13 interior spaces but culminated in a plan for 11 homes, in two rows: 4 row homes/2 carriage units in front, and 5 homes in the rear; which, with the exception of the carriage houses, would be) **up to 33 feet** in height, and requiring **different dimensional variances**, in a newly-zoned **ICMX District surrounded by an RS-5 District**, the identity of the thing sued for and the parties were not so identical that we are now bound by the *Poole* decision.

Moyer proposes to redevelop a long-vacant, deteriorating industrial lot and build residences that are, by all accounts, consistent with the surrounding neighborhood and, thus, granting the use variance would not alter the neighborhood's essential character or impair the adjacent property owners' use or development.

The ZBA did not, however, make any findings based upon substantial evidence that granting a use variance for Moyer's proposed residential development would not be detrimental to the public welfare. The ZBA specifically made findings regarding: Scott's concern about the Property becoming a "crime magnet[;]" FOF 39; R.R. at 194a, the petition by 52 surrounding neighbors regarding "their concerns about fire issues [and] safety issues[;]" FOF 41; R.R. at 194a, and Poole's "concern [] for fire safety[.]" FOF 42; R.R. at 195a. It is clear from a review of the record that Scott's concerns involved both crime and fire hazards because that inside/rear row of houses would not be visible or easily accessible from the street by fire trucks, police and others. *See* R.R. at 108a-109a. In addition, Poole contended that fire at the Property would jeopardize the neighborhood because fire trucks would not have access for water hoses to be directed at the flames which, due to proximity, neighbors' siding could melt, as it has done in the past. *See* R.R. at 117a, 260a.

Rather than reconciling the neighbors' concerns, the ZBA simply found that "proposed [aisle] width had been increased . . . to 22 feet (two feet short of the required minimum of 24 feet) and that the revised proposal had been reviewed and approved by the Streets Department," FOF 34; R.R. at 194a, and concluded that "the project will not negatively impact the public health, safety or welfare." COL 8; R.R. at 196a-197a. The ZBA specifically stated:

> With regard to the variance for aisle width, [Moyer]'s revised plans increase the proposed width to 22 feet, a deviation of only 2 feet from the minimum required by [the Zoning] Code. The [ZBA] concludes that, in view of the revision, the **requested variance is now *de minim*[*i*]*s*, and

that the requirements for grant of a dimensional variance are met.

COL 11; R.R. at 197a (bold emphasis and italic added).

Certainly, "it is not necessary to apply the normal standards for a variance . . . where the variance requested is *de minimis.*" *Lench v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 13 A.3d 576, 581 (Pa. Cmwlth. 2011). Although "[t]here are no set criteria for determining what will be considered *de minimis*[,]" *Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012), "a dimensional change of less than 10[%] will be treated as *de minimis.*" *Lench*, 13 A.3d at 582. "The grant of a *de minimis* variance *is a matter of discretion* with the local zoning board[,]" depending on the circumstances of each case. *Hawk*, 38 A.3d at 1066. However, this Court has made clear that a *de minimis* variance is permitted "where the variation requested **is minor <u>and</u> rigid compliance with the zoning ordinance is not necessary to protect public policy concerns**." *Id.* (emphasis added). Thus, where, as here, the local ordinance is in place to protect the public rather than to preserve open space, no variance, however *de minimis*, is appropriate.

Section 5-500 of the Zoning Code provides that the Streets Department "shall have the power and its duty shall be to" design, construct, repair, maintain, light, engineer, survey, map and keep clean streets in the City and into Fairmount Park. Zoning Code § 5-500; *see also* Title 11 of The Philadelphia Code. According to Section 14-301(9) of the Zoning Code, the Streets Department must pre-approve zoning permits for open air parking, parking elements for sports stadium and entertainment districts, certain parking garage building permits and bicycle parking facility permits. Zoning Code § 14-301(9). Because there is no evidence that the Streets Department's approval extends to the safety of Moyer's proposed drive aisle, the ZBA's reliance thereon is not substantial evidence that a variance would not put

AEC - 24

the public safety at risk. Accordingly, the ZBA did not, as required by Section 14-303(8)(e)(.2)(.c) of the Zoning Code, make a finding based on substantial evidence that a use variance would not be detrimental to the public welfare.

## Zoning Code Section 14-103(8)(e)(.2)(.d)
### Hardship cannot be cured with a dimensional variance

Under Section 14-103(8)(e)(.2)(.d) of the Zoning Code, the ZBA was required to make a finding that the hardship could not be cured with a dimensional variance. *See* Zoning Code § 14-303(8)(e)(.2)(.d). Although this Court can infer that a dimensional variance could not make permissible residential development at the Property zoned ICMX, the ZBA nevertheless did not, as required by Section 14-303(8)(e)(.2)(.d) of the Zoning Code, make a finding based on substantial evidence that a dimensional variance will not cure Moyer's purported hardship.

## Zoning Code Section 14-103(8)(e)(.3)
### Unnecessary hardship if dimensional variance is denied

In considering whether to grant a dimensional variance, Section 14-303(8)(e)(.3) of the Zoning Code authorized the ZBA to consider the economic detriment Moyer would suffer if the variance was denied and Moyer had to bring the Property into strict compliance with the Zoning Code. Here, the ZBA concluded that imposing the 20-foot yard depth requirement "**would unnecessarily constrain development of the remainder of the site**. The evidence of record establishes that the rear yard depth proposed is consistent with residential development and will not negatively impact adjacent properties." COL 13; R.R. at 197a (emphasis added).

However, the law does not support the ZBA's conclusion that constrained development constitutes unnecessary hardship. To the contrary,

> it is well-settled that in order to establish unnecessary hardship for a dimensional variance[,] an applicant **must demonstrate something more than a mere desire to**

AEC - 25

**develop a property as it wishes or that it will be financially burdened if the variance is not granted**. *Yeager* [*v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595 (Pa. Cmwlth. 2001)]; *Lamar Advantage GP Co*[*. v. Zoning Hearing Bd. of Adjustment of the City of Pittsburgh*, 997 A.2d 423 (Pa. Cmwlth. 2010)].

Further, taken together, the dimensional variances to exceed the permitted width, reduce the length of the loading dock, exceed the floor-area-ratio, and eliminate all off-street parking result in more than a mere technical or superficial deviation from the terms of the Ordinance; accordingly, [applicant's] appropriate remedy is a rezoning of the property. *See O'Neill v. Zoning B*[*d.*] *of Adjustment of* [*the City of*] *Phila*[*.*]*, . . . 254 A.2d 12 (*[*Pa.*] *1969) . . .* [3]*; see also One Meridian Partners, LLP v. Zoning B*[*d.*] *of Adjustment of City of Phila*[*.*]*, 867 A.2d 706 (Pa. Cmwlth. 2005) . . . .*

> [3] In *O'Neill,* the applicant sought a dimensional variance to construct a high-rise apartment building in center city Philadelphia with a floor-to-area ratio two and one half times that permitted by the Ordinance.  The [ZBA] granted the applicant the variance and the trial court affirmed.  On appeal, our **Supreme Court reversed the** [**ZBA**]**, concluding that the applicant did not meet its burden to demonstrate that the property could not continue to be utilized profitably as a parking lot or for a different purpose permitted by the Ordinance**. In so concluding, the court stated as follows:
>
>> While we might be willing to concede that in a given case the quantum of proof required to prove an unnecessary hardship might be less where petitioner is seeking a variance from space requirements than from use requirements, nevertheless this [is] not such a case. First, [**applicant**] **has not presented evidence that the property cannot be profitably used within the present space requirements**.  Second, [applicant's] apartment building would be more than a mere technical and superficial deviation from the space requirements. The building would

> contain approximately two and one half times as much floor space as is now permitted under the zoning regulations. In such a situation, [applicant's] remedy would appear to be a rezoning and not a variance.
>
> *O'Neill,* . . . 254 A.2d at 16.

*Singer*, 29 A.3d at 150 (emphasis added).

> **[T]his Court consistently rejects requests for dimensional variances where proof of hardship is lacking**.  Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*.

*Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012) (emphasis added).

Because Moyer presented no evidence that its residential development would be constrained by The Philadelphia Code's dimensional requirements, or that it would suffer economic detriment if the dimensional variances are denied and Moyer has to bring the Property into strict compliance with the Zoning Code, there was no basis upon which the ZBA could conclude that the Property's dimensional requirements "would unnecessarily constrain development . . . of the site."  COL 13; R.R. at 197a.  Thus, Moyer failed to prove unnecessary hardship in the case of a dimensional variance as required by Section 14-303(8)(e)(.3) of the Zoning Code.

In reaching the above conclusions, I acknowledge that "[a board's] interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009).  I also accept that "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land."  *Tink-Wig Mountain*

*Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 941 (Pa. Cmwlth. 2009).

> **However, a zoning board** is not a legislative body, and it **lacks authority to modify or amend the terms of a zoning ordinance**. '[Z]oning boards . . . **must not impose their concept of what the zoning ordinance should be**, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.' Thus, **the [ZBA] is required to apply the terms of the Zoning Ordinance <u>as written</u>** rather than deviating from those terms based on an unexpressed policy.

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation omitted; emphasis added) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.,* 658 A.2d 836, 838 (Pa. Cmwlth. 1995)). Our Supreme Court succinctly explained:

> 'We do not believe that it was the intention of the legislature, nor of the township supervisors, to empower a board of adjustment to set at naught the zoning statute and ordinance under the guise of a variance. **The power to authorize such a variance is to be sparingly exercised and only under peculiar and exceptional circumstances, for otherwise there would be little left of the zoning law to protect public rights; prospective purchasers of property would hesitate if confronted by a tribunal which could arbitrarily set aside the zoning provisions designed to establish standards of occupancy in the neighborhood**. Indeed, if such power were to be interpreted as a grant to the board of the right to amend or depart from the terms of the ordinance at its uncontrolled will and pleasure, it might well be challenged as being an unconstitutional delegation of legislative authority to a purely administrative tribunal.'

*Pincus v. Power*, 101 A.2d 914, 916 (Pa. 1954) (emphasis added) (quoting *Application of Devereux Found.*, 41 A.2d 744, 747 (Pa. 1945)). Here, the ZBA repeatedly failed to adhere to the Zoning Code's mandates.

Moreover, "[w]**here substantial evidence does not support the board's findings, the board abused its discretion and reversal is warranted**." *Hafner*, 974 A.2d at 1209 n.1 (emphasis added). Reviewing the evidence in Moyer's favor, as we must, substantial evidence does not support the ZBA's findings and conclusions that denial of Moyer's variances would result in unnecessary hardship. Accordingly, the ZBA's decision should be reversed.

### 3. Self-Imposed Hardship

The Majority concluded that substantial evidence supported the ZBA's findings that Maransky and/or Moyer did not create the unnecessary hardship because the Property was last used as a salvage yard, the steel structure was in a state of disrepair, the Property's condition is a blight on the surrounding residential neighborhood, the soil is contaminated and must be removed, and industrial development on the Property is not feasible. *See* Majority Op. at 23.

I agree that record evidence supports the ZBA's findings that "the Property was last used as an auto salvage yard" (FOF 6; R.R. at 191a), "the structure at the Property fell into a state of disrepair" (FOF 7; R.R. at 191a), and "the Property, in its current condition, [i]s a 'blight on the neighborhood'" (FOF 8; R.R. at 191a). However, for the reasons stated hereinabove, there is no substantial evidence to support the ZBA's findings that industrial development at the Property is not feasible and that the Property is contaminated. Accordingly, the ZBA's conclusions cannot stand.

For all of the above reasons, I would reverse the trial court's order.

_____
ANNE E. COVEY, Judge

AEC - 29